IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Crim. 05-12 E |
| ) | C.A. No. 07-24 E |
| ) | |
| SHAUN LANAIL BENNAFIELD, ) | |
| ) | |
| Petitioner. ) | |

## OPINION

Before the Court is Shaun Lanail Bennafield's *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 35), Mr. Bennafield's amendments thereto (Doc. 40) (collectively, "motion to vacate"), and his Memorandum in Support. The government has filed a Response to the Motion (Doc. 45), to which Mr. Bennafield filed a Reply (Doc. 49). For the reasons stated below we will deny the motion.

### *Background*

A one-count federal indictment was filed in this case on April 12, 2005, charging Mr. Bennafield with possession with intent to distribute and distribution of fifty grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841 (b)(1)(A)(iii). Mr. Bennafield was originally charged for the same conduct in state court, was released on bond, and began to enter into plea negotiations with the District Attorney's office with the aid of his then-counsel, David Ridge, Esq. These charges were dismissed, however, after the decision was made to prosecute him in federal court, and the federal indictment was issued. This Court issued an arrest warrant on the same day the federal indictment was filed. This Court declared the defendant a fugitive several months later, and he was ultimately arrested on October 12, 2005.

1

Mr. Bennafield, represented by counsel, pled guilty on November 10, 2005 without entering into a written plea agreement. On March 13, 2006, Mr. Bennafield was sentenced to 144 months' imprisonment to be followed by 5 years' supervised release. This sentence was imposed pursuant to the Sentencing Guidelines range as computed under the United States Sentencing Guidelines as they existed at that time.

Mr. Bennafield filed a timely appeal of his sentence to the United States Court of Appeals for the Third Circuit on March 27, 2006. The Court of Appeals affirmed Mr. Bennafield's judgment of conviction and sentence on November 11, 2006. Mr. Bennafield's petition for writ of certiorari to the United States Supreme Court was denied March 5, 2007. Bennafield v. United States, 549 U.S. 1271 (2007).

On February 9, 2009, although this motion to vacate remained pending, we entered an order (Doc. 52) granting Mr. Bennafield's "Unopposed Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2)" (retroactive application of Sentencing Guidelines to crack cocaine offense) (Doc. 51). In that order, his base offense level was decreased from the original level, 32, to 30, and his final adjusted offense level was decreased from 29 to 27. With his criminal history category remaining unchanged (Roman numeral V), his guideline range was amended to 120 to 150 months. Mr. Bennafield faced a statutory minimum sentence of 120 months. We then proportionally reduced his sentence to 123 months imprisonment, followed by a term of 5 years' supervised release.

*Motion to Vacate*

Mr. Bennafield raises the following claims in his *pro se* motion to vacate. First, he alleges ineffective assistance of counsel on the grounds that his counsel erred in failing to: a) argue there

was no probable cause to arrest defendant without warrant, b) object to criminal history points calculation, c) insist on a plea agreement that comported with an alleged plea agreement Mr. Bennafield's counsel in state court had negotiated with state prosecutors, and d) challenge the crack to powder cocaine ratio at sentencing. Second, he alleges a violation of his Fourth Amendment rights on the grounds that there was no probable cause to effectuate his warrantless arrest. Third, he alleges a violation of his "Fifth Amendment right" as a result of incorrect calculation of his criminal history points under the Sentencing Guidelines.

We note that in his supplemental petition, entitled "Motion to Amend 28 U.S.C. 2255 Pursuant to Rule 15(a) of the F. R. Civ. P." Mr. Bennafield sought leave to assert a motion for retroactive application of the crack cocaine amendments to the Sentencing Guidelines. In accordance with the practice of this Court, we appointed the federal public defender to represent Mr. Bennafield as to this issue, and we granted said relief by our Order dated February 9, 2009. This supplemental basis for relief will not be addressed in this Opinion, and will be denied as moot.

### *Evidentiary Hearing*

When a Motion is made under 28 U.S.C. §2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the Petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992). Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief. Id.; United States v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997).

3

We find no need for an evidentiary hearing as the record conclusively establishes that Mr. Bennafield is not entitled to the relief sought in the petition. 28 U.S.C. § 2255.

**I. Standard of Review under 28 U.S.C. §2255**

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. United States v. Cannistraro, 734 F.Supp. 1110, 1119 (D. N.J. 1989), aff'd, 919 F.2d 133 and 919 F.2d 137 (3d Cir. 1990), cert. denied, 500 U.S. 916. Pursuant to 28 U.S.C. §2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997), citing Hill v. United States, 368 U.S. 424, 428 (1962).

The Court must consider the motion together with all the files, records, transcripts and correspondence relating to the judgment under attack. See 28 U.S.C. § 2255, Rule 4(b). A district court considering a § 2255 motion " 'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record,'" United States v. Booth, 432 F.3d 542, 545 (3d Cir.2005) (quoting Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir.1989)), and it "abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." Booth, 432 F.3d at 546

4

(citing United States v. McCoy, 410 F.3d 124, 134 (3d Cir.2005). However, the final disposition of a § 2255 motion lies with the discretion of the trial judge, see Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir.1985), and a district court may summarily dismiss a § 2255 motion where the motion, files, and records "show conclusively that the movant is not entitled to relief." U.S. v. Mason, 2008 WL 938784, 1 (E.D. Pa. 2008), citing Forte, 865 F.2d at 62.

## II. Discussion

"Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal." United States v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir.1993) (internal quotations omitted). Moreover, "if a petitioner has failed to raise an objection at the time of trial and has also failed to raise the issue on direct appeal, then collateral review of that claim is procedurally barred unless the petitioner is able to show 'cause' excusing his procedural default and 'actual prejudice' resulting from the alleged error or violation." Henry v. United States, 913 F.Supp. 334, 335 (M.D.Pa.1996), aff'd, 96 F.3d 1435 (3d Cir.1996); see also United States v. Essig, 10 F.3d 968, 979 (3d Cir.1993) (holding that the "cause and prejudice" standard set forth in United States v. Frady, 456 U.S. 152 (1982) "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed"). However, a petitioner need not demonstrate cause and prejudice when raising a claim of ineffective assistance of counsel for the first time in a collateral attack. DeRewal, 10 F.3d at 104.

### A. Ineffective Assistance of Counsel

#### 1. Applicable Law

"A claim of ineffective assistance requires a defendant to establish that counsel's

5

representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993), citing Strickland v. Washington, 466 U.S. 668, 687-688 (1984). "To establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000) (quoting Strickland, 466 U.S. at 694).

In assessing the first prong, the Supreme Court has instructed that "[t]he proper measure of attorney performance" is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. This is an objective standard, and must be "viewed to the extent possible without 'the distorting effects of hindsight.'" Duncan v. Morton, 256 F.3d 189, 200 (3d Cir. 2001) (quoting Strickland, 466 U.S. at 688-90). In addition, a "reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" McAleese, 1 F.3d at 175 (quoting Strickland, 466 U.S. at 692). "The defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689.

Addressing the second part of the Strickland analysis, the prejudice prong, the Supreme Court has explained that a "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. at 694. In making the prejudice determination, the court must consider the totality of the evidence. Id. at 695.

A claim of ineffective assistance must identify the specific errors counsel has made. Conclusory allegations are not sufficient to support a petition under Section 2255. Blackledge v.

6

Allison, 431 U.S. 63, 74 (1977).

### 2. Analysis of Ineffectiveness Claims

#### a. Probable cause to arrest

First, Mr. Bennafield alleges that his federal public defender, Thomas W. Patton, was ineffective for failing to argue there was no probable cause to arrest him without warrant. Mr. Bennafield argues that:

> if counsel would have reviewed the arrest warrant thoroughly, counsel would have found out that the affidavit lacked information as to the reliability of the informants and the claimed insufficiency of details about the drug dealing activities of defendant (known to the informants as Kenny) was also unsubstantiated; therefore, it would have been appropriate for counsel to petition the court to ask for a probable cause hearing. There is a reasonable probability that if the court would have held a probable cause hearing, the evidence would have been suppressed.

Motion to Vacate (Doc. 35) at 10.

Mr. Bennafield was the subject of an Erie Police Department investigation involving cooperating informants in March of 2005. A search warrant had been executed at a residence, where crack cocaine was found, and the individuals who lived at the residence implicated an individual known to them as "Kenny" from Cleveland. "Kenny" was later identified by them as the defendant; they named him as their supplier. Those individuals cooperated and provided information to the authorities concerning the defendant, and a controlled buy plan was arranged. While under surveillance, a confidential informant ("CI") purchased crack cocaine from the defendant at a pre-arranged location, a local laundromat. The CI, under the guise of needing to retrieve money from his apartment, left Mr. Bennafield at the laundromat and went to the CI's

7

apartment, where he turned over two ounces of crack cocaine (later measured as 67.6 grams) to an Erie Police Department officer. Officers then went to the laundromat to arrest Mr. Bennafield, who turned and ran away upon seeing the police, tripped and fell onto the floor. The police held him to the floor to handcuff him, and observed a baggie of marijuana on the floor by the defendant's head and chest.[1] He was arrested and transported to the Erie Police Department.

We find that defense counsel was not ineffective for failing to argue that there was no probable cause to arrest Mr. Bennafield without a warrant. Probable cause to arrest exists when the totality of the circumstances within the officer's knowledge is sufficient to warrant a person of reasonable caution to conclude that the person being arrested has committed or is committing an offense. U.S. v. Laville, 480 F.3d 187, 192 (3d. Cir. 2007), citing United States v. Myers, 308 F.3d 251, 258 (3d Cir. 2002) ("the validity of an arrest under state law must never be confused or conflated with the Fourth Amendment concept of reasonableness, and that the validity of an arrest under state law is at most a factor that a court may consider in assessing the broader question of probable cause"). Under Pennsylvania law, law enforcement officers must have probable cause to believe that a felony has been committed and that the person to be arrested is the felon, prior to effectuating an arrest. Commonwealth v. Clark, 735 A.2d 1248, 1251 (Pa. 1999). Similarly, it is reasonableness that is the central inquiry under the Fourth Amendment.

---

[1] When Mr. Bennafield entered his guilty plea, he denied a portion of the government's version of the story. Specifically, the government asserted that on the day of his arrest, as he was being handcuffed, Mr. Bennafield admitted to the arresting officers that the bag of marijuana sitting next to him was his and that he knew the CI was "trying to set him up." Mr. Bennafield denied having made these statements. Transcript of Plea hearing dated November 10, 2005 (Doc. 31) at 19. For the purpose of addressing this motion to vacate, we assume only the version of the facts to which he admitted at the plea colloquy.

8

United States v. Williams, 417 F.3d 373, 376 (3d Cir.2005). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." Hill v. California, 401 U.S. 797, 804 (1971). Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested. Draper v. United States, 358 U.S. 307, 313 (1959); Myers, 308 F.3d at 255.

It is clear from the uncontroverted evidence, when viewing the totality of the circumstances, that the Erie Police Department officers had probable cause to believe that Mr. Bennafield had committed a felony (either possession with intent to distribute a controlled substance and/or delivery of a controlled substance) or misdemeanor (possession of marijuana). He was identified by two CIs as a crack cocaine dealer, and a surveillance officer observed an exchange take place between Mr. Bennafield and the CI at the laundromat. In addition, the CI who had conducted the controlled purchase turned over two ounces of crack cocaine to authorities upon returning to his apartment. Even if the informants' testimony was somehow unreliable or untrustworthy, Mr. Bennafield further added to the determination of probable cause when he ran from the officers who approached him in the laundromat; the officers observed the baggie filled with marijuana falling and landing near his body after he tripped and fell. Based on the totality of the circumstances, probable cause existed for the officers to conduct a warrantless arrest, both under state and federal law.

When ruling on a § 2255 petition, the Court may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir.2006). To establish prejudice, the movant must

9

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." Id. As there would have been no legal basis for attorney Patton to challenge the warrantless arrest, the result of the proceeding would not have been different had he requested a suppression hearing. Mr. Bennafield's counsel therefore was not ineffective.

### b. Criminal History points

Mr. Bennafield further argues that his counsel was ineffective for failing to object to his criminal history points calculation. Specifically, Bennafield argues that he should not have been assessed two criminal history points (at ¶¶ 29 and 39 of his Presentence Report) for his prior convictions because his sentences were "suspended;" he also argues that because the two sentences at ¶¶ 33 and 35 ran concurrently, he should be assessed only two, not four, points.

We disagree. Section 4A1.1 states that two criminal history points are assessed for each sentence of imprisonment of at least sixty days; the phrase "sentence of imprisonment' is defined with respect to the maximum sentence imposed. U.S.S.G. § 4A1.2(b)(1). There is no dispute that the maximum sentence imposed therein was six months (which is more than sixty days) and therefore, we find that the two criminal history points were correctly assessed. Similarly, Mr. Bennafield errs when he asserts that pursuant to section 4A1.2(b)(2), only the time he actually served should be counted to determine the length of the sentence. As explained in the corresponding Commentary, "criminal history points are based on the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2 Commentary, Application Note 2.

Attorney Patton did not err in failing to object to this portion of the criminal history calculation. Nor did he fail by not objecting to a "suspended" sentence at paragraph 39; Mr. Bennafield was given credit for the time served while charges were pending; however, it is the maximum sentence pronounced that is used to compute the sentence of imprisonment under 4A1.1(b).

Mr. Bennafield also argues that, with respect to paragraphs 33 and 35 of the PSR, because the sentences for his prior convictions ran concurrently to each other, he should have only been assessed a total of two, rather than four, criminal history points for both convictions. The relevant provision of the version of the Guidelines in effect at the time of Mr. Bennafield's sentencing states:

> Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c).

U.S.S.G. § 4A1.2(a)(2). Application Note 3 defines "related" cases:

> Related Cases. Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest.... Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing. The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger he presents to the public.

U.S.S.G. § 4A1.2, comment. n. 3.

Section 4A1.2(a)(2) makes clear that prior sentences imposed in unrelated cases are to be counted separately; his prior convictions are clearly not "related" as that term is defined in the Sentencing Guidelines. U.S.S.G. § 4A1.2 Commentary, App. Note 3. The convictions referenced

11

at paragraphs 33 and 35 were "separated by an intervening arrest" for reckless operation and speeding. Thus, they must be counted separately. Again, we find that Mr. Patton was not ineffective for failing to challenge the calculation of criminal history points, as such a challenge would have been futile.

### c. Lack of Plea Agreement

Mr. Bennafield next argues that his counsel was ineffective because he failed to insist on a plea agreement that comported with an alleged plea agreement negotiated on Mr. Bennafield's behalf with state prosecutors. We have reviewed the transcripts of the plea colloquy and sentencing hearing, as well as the positions of the parties with respect to sentencing factors. Mr. Bennafield was charged in a one-count indictment. However, the state court proceedings involved multiple charges, and we therefore assume that plea negotiations were a simpler matter because counsel was able to negotiate the dismissal of certain charges in exchange for a guilty plea on other(s). It is clear to us that Mr. Patton's conduct did not fall below an objective standard of reasonableness; he ardently sought leniency on behalf of his client. In fact, at the time of his sentencing, Mr. Patton made this Court aware of the fact that had Mr. Bennafield's case proceeded in state court, and had the plea negotiations come to fruition, Mr. Bennafield was "facing a sentence in the range of three to six years, or possibly, five to ten years." Position with Respect to Sentencing Factors (Doc. 22) at 4-5. He argued that although the sentence Mr. Bennafield faced in state court did not bind this Court, it was one of the factors to be considered under 18 U.S.C. § 3553(a)(2). There was nothing else that Mr. Bennafield could have expected his counsel to argue, as state court plea negotiations have absolutely no binding effect on federal courts; his counsel would not have been able to negotiate a specific term of imprisonment under

the Guidelines and specific circumstances of this case. Mr. Bennafield has a long criminal history of felony drug traffic convictions and faced a ten year minimum. A plea agreement in state court, which in this case never came to fruition because the charges were dismissed at the state court level, only binds the parties; normally, the court maintains the authority to impose a sentence at its discretion. Once the decision was made to charge Mr. Bennafield in federal court, the game changed, and Mr. Patton did the absolute best job he could in advocating on behalf of his client. We made it clear to Mr. Bennafield during his plea colloquy that the maximum penalty was a term of imprisonment of not less than 10 years to a maximum of life, that if the sentence imposed was more severe than he expected, he was still bound by his guilty plea in federal court, and that nothing stated by the Court during his plea colloquy suggested what his actual sentence was going to be. (Doc. 31 at 12, 15, 16.)

### d. Crack Cocaine Disparity

Mr. Bennafield challenges the effectiveness of counsel because he failed to challenge the crack to powder cocaine ratio at sentencing. However, at the time of Mr. Bennafield's sentencing the crack/powder cocaine ratio case law did not support such an argument, and we therefore find that Mr. Patton was not ineffective in failing to raise the argument. The case United States v. Gunter, 462 F.3d 237 (3d Cir. 2006), for example, was decided on September 22, 2006; Mr. Bennafield was sentenced on March 15, 2006. Moreover, this issue is moot; it cannot be said that Mr. Bennafield was prejudiced by this alleged deficiency, because we have since granted his motion for reduction of sentence based upon the crack/powder discrepancy.

As to the remainder of Mr. Bennafield's claims, we find that they are subject to dismissal

13

because they are vague and conclusory. United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) ("vague and conclusory allegations contained in a §2255 petition may be disposed of without further investigation"); United States v. Dawson, 857 F.2d 923, 928 (3d Cir.1988).

### B. Certificate of Appealability

The remaining issue before this Court is whether a certificate of appealability ("COA") should be issued with respect to Bennafield's motion to vacate. A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000). We find that jurists of reason would not find it debatable whether Mr. Bennafield states a valid claim of the denial of a constitutional right and jurists of reason would not find it debatable whether we were correct in concluding that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

### V. Conclusion

Mr. Bennafield's section 2255 motion will be denied, and a certificate of appealability will not be issued.

An appropriate order will be entered.

Date: May 6, 2009

Maurice B. Cohill, Jr.
United States District Court Senior Judge

14